Good morning, Your Honors. May it please the Court. The appeals before you concern the wholesale sealing of a high-profile criminal case. Everything about the prosecution of Jonah Rechnitz, all judicial documents, including the Court's docket, and all judicial proceedings, including the defendant's plea hearing, were shielded from public view for approximately nine months. In denying appellant's motions to unseal the criminal case pending against Mr. Rechnitz, the District Court refused to even confirm its existence. The extreme secrecy to which the prosecution of Mr. Rechnitz was carried out is anathema to our open system of justice. What is it that you want? We would ask that the Court issue an opinion vacating all four of the relevant rulings in this case, Your Honor. Those are the two rulings issued by the Part 1 judges, Judge Abrams and Judge Stein, as well as the two rulings, the June 3rd initial sealing order issued by Judge Sullivan and the July 25th continued sealing order issued by Judge Sullivan. But you only filed notices of appeal with respect to Judge Abrams and Judge Stein. That's correct, Your Honor. That is because we were not aware of Judge Sullivan's existence, of Judge Sullivan's rulings, until after our opening brief in this appeal was filed. I would point the Court to En Re. Isn't that a problem for you? It is not a problem, Your Honor, because Federal Rule of Appellate Procedure Rule 3 is not an appellate pleading requirement. This Court in the United States against Haller dealt with a similar issue. In that case, the newspaper appealed from one order as opposed to two. In that case, it was the newspaper's mistake. I would say it's not our mistake here. We didn't know about these orders. But the Court found that because it could be fairly inferred that the appeal was being taken from both relevant rulings, the Court considered the propriety of both rulings. I think that's similar here. Obviously, there's no prejudice to the government. The government, in fact, argued, relies exclusively on the July 25th ruling by Judge Sullivan. What is it exactly that you're challenging? I mean, you asked for an opinion. But what precisely are you challenging? We're challenging both the entirety of the sealing, the level of the sealing in this case, not just the closure of the docket for approximately nine months, but the closure of all hearings, including the guilty plea hearing of Mr. Rechnitz. I think we're also challenging substantively the need for any sealing. I mean, I think it's pretty evident from the record in this case that there was no consideration of alternatives to wholesale sealing, which is contrary to this Court's precedent in United States v. Doe. And certainly, the government has not even attempted to argue, and I don't think it could, that this wholesale sealing was narrowly tailored, as is required by the First Amendment. But I think if you — I didn't mean to interrupt. I'm sorry. When you use the word wholesale sealing, basically, there was the plea minutes. And if you're going to — if it was okay to seal the plea minutes that Rechnitz was pleading guilty, everything else, there's really, in fact, nothing more. You know, the docket sheet, if you were going to have a docket sheet that was unsealed, it would indicate what happened. I'm not sure, you know, the word wholesale is a nice word, but, you know, essentially, the government wanted to keep secret the fact that Rechnitz was cooperating. And at the proceeding before Judge Sullivan, that's what was disclosed. So I don't know what would you have gotten if they had crossed out his name and crossed out the description of his cooperation. I think there are two issues there, Your Honor, and I'll start with the first one. I think this goes well beyond the sealing of an entire plea hearing, which is what occurred. The entire plea hearing was sealed, as well as any transcripts of that hearing. The whole thing took about 20 minutes. I mean, this is not like the sealing of, you know, a suppression motion, which goes on for days. This was at most 20 minutes, and once you will—maybe I do too many guilty pleas. But once you take out the information that the government didn't want disclosed, it's basically nothing. It's a description of all the rights that a defendant has. It's wrote. Most judges have a form, and it basically is designed to ensure that the defendant is fully aware of the rights that he's giving up by pleading guilty and what the potential sentence is that can be imposed. That's it. That's the wholesale. I think this goes beyond just the plea hearing, and I would not concede that the public— there is an important role that the public plays in oversight of plea hearings, particularly given that most criminal prosecutions end with guilty plea hearings. I think they're an important element of the criminal justice process, and, in fact, that's exactly what this Court held in the United States against Haller when it determined that the public has a constitutional First Amendment right of access to plea hearings and related documents. That being said, this goes beyond just the plea hearing. It's the docket itself. It is the roadmap to the criminal proceeding. It is, in fact, the very existence of the criminal proceeding. Our clients, appellants, were well aware, based on all— not just all the media reporting and public reporting on this issue, but because of the filings that were made by the government in the Seabrook and Grant cases of Mr. Rechnitz's cooperation. The fact of his cooperation was not a secret. Because the docket sheet itself was not public and there was no public knowledge of the case itself, this was a compounding constitutional problem. I'm just trying to still understand what it is precisely that you're challenging. If Judge Sullivan had articulated all of the necessary factors in connection with determining that it was appropriate under those circumstances to seal the plea and thereafter Judge Abrams and thereafter Judge Stein had, in effect, either repeated what he said or incorporated his findings, would you have a leg to stand on? We would under the circumstances of— All right. Why? We would under the circumstances of this case, Your Honor, because the substantive requirements aren't met. The countervailing — the two countervailing interests that have been asserted by the government and were adopted by Judge Sullivan without any adversarial process seemingly whatsoever, without consideration of the motions to unseal that were presented to the Part 1 judges, it defies reality to think that those countervailing interests are present in this case. What were the countervailing interests? The government asserted witness safety as an issue as well as the protection of ongoing investigations. He had given the amount of public information about Mr. Rechnitz and about his cooperation with the government. So you're saying, is that a — are we supposed to review that as — on a clearly erroneous standard? The standard — this Court should review the legal determinations of the district court de novo. It is an abuse of discretion standard. But what you're saying is that the countervailing interests had no basis in fact. Is that not what you're saying? We're saying that the government did not present to Judge Sullivan information, including concerning information about disclosures that the government had made about Mr. Rechnitz's cooperation, to Judge Sullivan. And accordingly, the abuse of discretion standard applies to the overall sealing determination. However, this Court has held that in cases implicating the First Amendment right of access or the common law right of access, that this Court's inquiry is more searching and is more stringent than it would be under ordinary abuse of discretion review. Accordingly, this Court has routinely looked to the underlying — the entirety of the record to determine whether or not sealing was, in fact, appropriate. It's not de novo. It's really an abuse of discretion, but more searching abuse of discretion. It's an abuse of discretion standard, but this Court has reviewed underlying — the underlying record because it is conducting a more stringent — a more stringent review in light of the First Amendment consideration. So just so that I understand, but correct me if I'm wrong at any point, your actual position is maybe twofold, but at least with respect to Judge Sullivan, he did not have a basis in the record, and the government didn't provide to him a basis for determining that there were any countervailing interests. Is that correct? That's correct, Your Honor. We challenged these rulings on both substantive and procedural grounds under the First Amendment. And as to Judge Abrams and Judge Stein and their orders, what exactly is your challenge? We again challenged them on substantive and procedural grounds. We don't believe they are sufficient to justify a sealing. I think the government has conceded as much. Again, they acknowledged that Judge Abrams and Judge Stein's opinions do not include factual findings at all and rely entirely on the July 25th ruling by Judge Sullivan. When did this first come up? I mean, when was your client first aware and interested in this case? My client had been — there was first media reporting concerning Mr. Rechnitz's cooperation in April of 2016. In June of 2016, the government filed the Grant and Seabrook complaints, effectively identifying Mr. Rechnitz as CW1 in everything but name only. Certainly the defendants were well aware of Mr. Rechnitz's identity at that point. One of the defendant's attorneys spoke publicly to The New York Times saying, you know, my client's only mistake here was being friends with Jonah Rechnitz. So at that point, it was after the Grant and Seabrook filings were made that DNA Info and Mr. Fisher then sought to unseal. Did you head from that spring until at least December to litigate the point? We — Mr. Fisher immediately filed a motion to seal. Would you answer my question? To unseal. Did you head from that spring until December when Judge Stein's order came out to litigate the point? Is that correct? That is correct, Your Honor. Okay. And so why is that too short a period of time to fully litigate the issue? And that's one of the prongs in connection with determining whether this is capable of repetition yet evading review. Both the United States Supreme Court and this court have consistently determined that closure orders and sealing orders are generally too short in duration in order to be fully litigated. That is definitely the case here. The wholesale sealing of Mr. Recknitz's prosecution lasted approximately nine months, which is — the U.S. Supreme Court has — I mean, Haller was a much shorter period of time. But are you aware of a similar case where the duration of the dispute, so to speak, lasted even remotely close to nine months? A quintessential example would be Roe v. Waite, Your Honor. The United States Supreme Court held that that nine-month, the normal gestation period of a fetus was too short. That was a case that was inevitably going to involve Supreme Court review. You have a fact-specific challenge where the law does not seem to be terribly much in dispute and in which a prompt decision might have been obtained through a writ of mandamus. I mean, it's not as if you're deciding whether a woman should be entitled to a constitutional right to abortion, which obviously was going to take more than nine months to decide and to go to the Supreme Court. If I understand your position, it's there was — under well-established law, there was an abuse of discretion because all of the information that the government wanted to keep secret was essentially a matter of public record. And it seems to me that that would not have — that that could have been resolved in a relatively short period of time. I would point this Court to actually the D.C. Circuit decision in Washington Post against Robinson in which the government made the argument that it makes here without citing any authority in support. In other words, that because appellants here didn't seek expedited review of the district court's rulings, that should count against them in determining whether or not this case is capable of repetition yet evading review. The D.C. Circuit in Robinson, I think, persuasively rejected that argument, noting that if you applied an expedited review requirement, that it would, in its words, wreak havoc on the scheduling of the appellate courts that have other important matters to attend to, even on an expedited basis. The Ninth Circuit and the Eighth Circuit and perhaps other circuits on this precise issue have gone the other way. I think, Your Honor, that the — With respect to expeditious review. And I think that the appellants in this case, although they did not seek expedited review in this court, which, again, I would point to Robinson because I think it's a persuasive decision. It was very similar in the sense that it was a plea agreement that had been sealed involving a cooperating witness. The court said, yes, it's possible that in those cases review could be obtained, but it generally cannot be obtained. And in light of the importance of contemporaneous access to plea hearings and plea agreements, it was important for the court to rule on that case. And it found that if it applied this expedited review requirement, that there would be — that it would foreclose review of cases where review was warranted. And I would say that this is one of those cases. The government here has argued that this is a routine practice, that it is routine to seal cases involving cooperating witnesses in their entirety. I think given that and the nature of the fact — they want to seal those minutes for very different reasons. And they're not the same in every case. It seems to me that in this particular case, it was possible to get review before the before the indictment, before there was complete unsealing. The fact that it was, again, possible perhaps, but I think unless we saw an expedited review, which I believe we were required to do in order to seek review of this decision, then it was not possible. Nine months is not a period of time through which an appellant can seek entire — I'm not saying unless you saw expedited review. But expedited review under the circumstances of this case was not necessarily unrealistic. That's all I'm saying. I agree with you. There are cases where your argument would have a force. But this court has decided cases on expedited review, mandamus cases. It often will decide the case and say we'll issue an opinion to follow. I mean, there's not — there is no insensitivity to the need for expedited review. On Monday, I was sitting on a criminal case where the defendant got a relatively short sentence. I'm not certain, 25 months. He moved for a stay in September of his surrender. It was denied without prejudice, and the court suggested that it be placed on the calendar for expedited review. It was argued on Monday, and the panel is quite aware of the necessity for a prompt decision. Before that — well, criminal cases probably never become moot for a variety of reasons, but before he serves a sentence. So these things are — it depends on the circumstances. And there just seems to me that right now, you were asking, you would be satisfied, I assume, with a ruling that said that there was an abuse of discretion in this case in sealing because all of this stuff was a matter of public record and everybody knew. And if that's what we said, you would be satisfied? Your Honor, I would say with respect to the mootness point that this court has decided cases where appellants have not sought expedited review that involves similar closure and sealing orders, the United States v. Haller is an example. I would also note that given the circumstances of this case where there was wholesale sealing that by its very nature evades public challenge because the members of the media and the public cannot challenge the sealing and closure of cases that they do not know exist. I think given that as well and given the fact that the U.S. Attorney's Office has, again, represented that this is a routine practice in cases involving cooperating witnesses, I think cuts in favor of this Court reaching the merits of this decision. The complaint in the Seabrook case basically said what happened, except for the name of the C-1 and the judge before whom it happened. So there's none of this, according to you, and it was a big secret. That, I think, cuts against the government's argument that sealing was appropriate in this case. Your Honor, I think that you are correct. The Seabrook complaint disclosed the fact that Mr. Reknitz was cooperating in multiple investigations and that he had pled guilty. So it disclosed the point at which the investigation was. That the government would then argue to Judge Sullivan that total secrecy was necessary, I think cuts against this argument. Thank you very much. Can I ask one more? Oh, sure. Ms. Townsend? In your, I guess it's the gray brief, in your reply brief at page 7 in explaining DNA's filing, you say, Fisher timely and feel on August 24, 30 days almost to the day after the adverse ruling. Shortly thereafter, believing that circumstances surrounding the Reknitz prosecution, including increased media coverage, had changed since Fisher's earlier request to unseal was denied, DNA filed its own motion to unseal. Were there changed circumstances? There was additional media coverage in the intervening period. I think that the primary concern of appellants and the reason that DNA info separately sought to unseal was the concern that because it had been disclosed that Mr. Reknitz pled guilty, that his sentencing proceeding was imminent and that the public would have no press, would have no knowledge or opportunity to object to closure of his sentencing proceeding if it did not have access to the docket and did not know when that sentencing proceeding would take place. That was really the primary reason that DNA info filed its own separate motion to unseal. I'd also note that because we only had access to the Part 1 judge's ruling, Judge Abrams' ruling on Jane and Fisher's motion to unseal, we had no idea, which I would note refused to either confirm or deny the existence of the Reknitz prosecution. We had no idea whether the district court judge was going to be treating Mr. Fisher's request to unseal as a continuing request to unseal, which is sometimes what a district court will do. We didn't see what was happening behind the curtain, so to speak, and that is the rationale for DNA info filing its own separate motion at a later date. All right. You have reserved some time for rebuttal. Thank you, Your Honor. Mr. Nowaday. Good morning, Your Honor. It's Khan Nowaday for the United States. I am one of the prosecutors on the case below. Your Honors do not need to reach the merits of this appeal. It is mute. I don't think there is any serious dispute that all the matters the appellants seek to have unsealed have been unsealed. So can you explain to me U.S. fee holler? Because that seems to trend against the argument you're making. That's fair, Your Honor. And I think really it's a matter of facts specific to this case and what happens in cooperator sealings. First, I just ---- I mean, that was a sealed plea agreement. I'm assuming that that was a sealed cooperation plea agreement. That's correct, Your Honor. However, the timing here was specific to Mr. Reckness's cooperation. It was unsealed after nine months. And we had not generalized assessment of safety concerns. We had real specific safety concerns. And, of course, this goes to the merits argument. So I want you to focus on the mootness argument because that is of interest to me because I'm having a hard time figuring out how to circumvent, if that's what we wanted to do, what our colleagues, Judge Winter, said in holler. Well, Your Honor, I think another way to think about it is also the delay in this case coming from, in part, the delay from the appellants. The appellants, as Judge Corman has noted, could have moved for expedited review in this case, and they did not. We did not. We have never, at least I haven't seen a decision from this circuit, unlike the Ninth and Eighth Circuits, we have never actually required that the parties seeking, in this case, disclosure, seek expedited review. That's correct. And as Ms. Townsend pointed out, the D.C. Circuit has pretty emphatically gone the other way on that point. And that's correct, Your Honor. That's absolutely correct. However, in this particular case, on the facts specific to this case, half of the sealing period, five months of the nine months, was due to the delay in Janan Fisher filing their brief. I don't know if they had gone the regular course and filed more quickly, whether they would have even needed expedited review to have the merits. Maybe I misunderstood what Ms. Townsend said, but I thought that at some point they didn't even know what it was that they could challenge, and maybe that accounted for some period of the delay.  That may be fair, Your Honor. That may be a fair point, because it was Judge Sullivan who had the Mr. Reckness's case, and Judges Abrams and Judge Stein were sitting Part I. However, both those judges who were sitting Part I did have, and we had presented to them, Judge Sullivan's findings of facts, so they did rely on Judge Sullivan's findings in making their decisions. However, you are right that they have your follow-up letters that you wrote to Judge Sullivan. Your Honor, and that goes to the narrowly tailored point. The sealing was narrowly tailored. Judge Sullivan required us to write letters, I believe, about every 30 days. So we submitted letters, ongoing letters, setting forth the facts specific to Mr. Reckness's cooperation, the ongoing investigations, the threats to safety to Judge Sullivan so Judge Sullivan would be aware of the necessity to, and could find otherwise, if he did not continue to believe there was a continued necessity to seal it. No, but did Judges Stein and Abrams have access to those letters? Judges Stein and Judge Abrams had access to the letters that had been filed up to that point, I believe. Each of the letters? Well, up to the point that they were addressing the… Right, that's what I'm asking. Yes, but not the subsequent letters, Your Honor, because there were subsequent letters after those. No, I understand that. But at the time, they had everything, obviously, prior, including Judge Sullivan's order. I believe they had the order or the facts in our letters, which set forth and summarized what those facts were in the order, Your Honor. Could they have asked who the judge was? Yes, Your Honor, and… In other words, could they ask who the original judge was who entered the order? Judges Stein and Judge Abrams? No. Could the petitioners have asked? I believe they could have, Your Honor. I mean, that wasn't a secret that you would have insisted on. No, we would not have insisted on that being a secret. And could I ask one more question? Why did you proceed by, originally, by a complaint? And then where you put a lot of the material in, which they claim taken with what was already, or what was going to become part of the public record, sort of let the cat out of the bag. And if I read your brief correctly, that material was also in the subsequent charging instrument. I don't remember whether Seabrook was charging it. I believe that it was in an information. Why did you put that all in? Your Honor, the decision to proceed by complaint is case by case. Sometimes the United States Attorney's Office proceeds by complaint because of the stage of the investigation, because it wants to have a certain period to continue investigating before an indictment is returned, and because if an investigation is in flux, a complaint allows you to move more quickly than an indictment otherwise would. And sometimes a complaint provides a message not only to the defendant but to others who are complicit in whatever the illegal conduct is. And I take it that part of what happened here was that you, by proceeding with the complaint, the government wanted to make it very clear that it had a certain set of facts and a certain number of people involved. Is that fair? That's fair, Your Honor, but also, just where I think Your Honor is going, the government never named Mr. Rechnitz or gave any identifying information about him in either the Seabrook or Grant complaints. The only, if you look at the face of the complaints, any casual observer would not be able to identify that it was Mr. Rechnitz who was CW1. It requires digging. It requires investigation, which the press sometimes is very good at, in order to determine the identity of who CW1, Mr. Rechnitz, is. And I also think there's a material difference going to the merits argument between official acknowledgment of who a cooperating witness is and media reports speculating about who a cooperating witness is. And if I can briefly move to the merits, Your Honor, there were, Judge Sullivan did not in any way, shape, or form abuse his discretion here. There were ample facts before Judge Sullivan to find at least two countervailing factors calling for sealing and closure. First and foremost was safety of Mr. Rechnitz, and two facts are important here on the safety point. Again, there was no generalized assessment by the government in its application to Judge Sullivan about its safety concerns with respect to Mr. Rechnitz. We pointed out specific threats made to Mr. Rechnitz based simply on media speculation that he might be cooperating. We pointed out that there was a voicemail sent to Mr. Rechnitz from an individual, essentially threatening him because there was speculation that he was cooperating. And so Judge Sullivan, to the second point on safety, it was wholly reasonable for him to find that sealing was appropriate. So when you say you pointed that out, how did you point that out? Was that in a letter or was that in a letter? That is in the – there's a July 20, 2016 letter to Judge Sullivan in response to his July 13, 2016 order directing the government to submit a letter explaining the need for continued sealing, and that's on page 3 of the letter. Quote, at the bottom, the defendant has received voicemails containing threats. In one, an anonymous caller said, quote, you scumbag, I know where you live, I know who you are, comma, your family. Was that also – was it – were there – I guess that specific one wouldn't have been in the initial application, but were there in the initial application to Judge Sullivan, was there a similar – I don't think in the initial application for closure we set forth what the specific threat was. I believe we set forth that there had been these threats in the initial closure application, which closed the plea proceeding. I see my time has gone over, unless Your Honors have any other questions. We'll rest on our submission. In the abuse of discretion part, you said there was a safety rationale. What else did the government provide by way of justification for full closure? The second countervailing factor was the frustration of ongoing investigations. There were three specific categories of investigations in which Mr. Recknitz was cooperating. One was the campaign fundraising investigation relating to Mayor de Blasio's campaign fundraising. The second investigation was an investigation of corruption involving high-level NYPD officials. And the third bucket of investigation, and this is one in which there was no real media reporting at the time, was an investigation of the corruption at the Westchester County Executive's office. Ms. Chinoue, just turning to Judge Abrams, I'm trying to figure out how to analyze those two orders because the government seems to concede that Judge Abrams and Judge Stein, I think, failed to make the appropriate findings, at least on the record, in connection with continuing the sealing of the plea minutes. First, do I have that right in terms of the acknowledgment, concession? I mean, concession is a bad word sometimes in this courtroom, but acknowledgment? Your Honor is right that the actual orders issued by Judge Stein and Judge Abrams were somewhat light on actual fact-finding. Judge Abrams and Judge Stein, however, did, as the government argues in its papers, have the relevant facts before them. They knew Judge Sullivan's findings. They knew that it was Judge Sullivan who had the case. But don't we usually require in each case, when there is a challenge, the district court judge to make findings to show that the need for sealing continues? That's correct, Your Honor. The law does require specific findings. However, I think in this particular case, given that both these judges had been relying on Judge Sullivan's prior findings. So Judge Abrams doesn't say that she's relying on Judge Sullivan's prior findings. She refers to Amedeo, Lagash, and that's it. That's correct, Your Honor. So what do we—so help me out. Judge Abrams was aware. She had contacted—I don't think this is in the record. She had contacted our office concerning who had the original case. So she was provided those materials. It is true that she did not make specific findings and did not say explicitly. So am I wrong or right that she refers to the fact that she's reviewed the government-sealed ex parte letter? Did that attach Judge Sullivan's prior ruling? I don't know specifically if it did attach Judge Sullivan's prior ruling. It definitely attached the letter summarizing what those findings were and the reasons for those findings and what the factual basis was for seeking. And is it the government's position that just by referring to the attached letter, the ex parte letter, that that's enough in connection with determining that sealing is appropriate? It is, Your Honor. It's also part of our position that it is a unitary court, a district court. These were judges who were sitting part one. So is that, by the way, this unified court theory, is that confined to the acts of a part one judge when it's in the context of an ongoing criminal case? Or is that a broader theory? Here we're using it as a broader theory, Your Honor. Well, part one theory, I'm sorry. A part one theory. Okay. So just so that I understand, when a part one judge is asked by way of sort of a miscellaneous motion to make a determination, the government's position is that we should view that as really almost a law of the case, but part of the ongoing criminal proceeding? In a case like this, yes, Your Honor. So whatever was in the mind of the presiding district court judge, we assume was also in the mind of the part one judge? Only if they are made aware, Your Honor, of what the other judge, the assigned judge, and through consultation. Do you have any authority for this theory? No, Your Honor. Okay. Could I ask you about Judge Stein? He said that after considering all submissions on this application, that the government, this is his finding, after considering all submissions on this application, that the government has met its burden and that the requirements to seal any relevant records have been satisfied. And then he goes on to say, notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if countervailing factors in the common law framework or higher values in the First Amendment framework so demand. Accordingly, DNA's application is denied. That is a much, an even longer statement than Judge Abrams. What is he referring to, all the submissions on this application? And actually, I think I can answer both Judge Loyer and both your questions on the issue. With respect to Judge Abrams, what was before her, there was, and this is Is there anything in the record? Yes, Your Honor. The government had submitted its unredacted documents as part of, to this court as part of its submission. There's a July 26, 2016, ex parte letter to Judge Abrams. Where is that? That was among the materials that were cited in our brief and submitted separately to the court. And that's a July 26, 2016 letter to Judge Abrams. And it did attach the July 20, 2016 letter the government had submitted to Judge Sullivan as well as Judge Sullivan's July 25, 2016 order. So that's what Judge Abrams had before her. Similarly, there was a July 29, 2016 ex parte submission to Judge Stein, which set forth, summarized the facts before Judge Sullivan. So, are they making independent findings or are you saying that they're just rubber stamping Judge Sullivan? They are making independent findings based on the government's submission to them at the time because new submissions were made and those submissions referenced or attached Judge Sullivan's findings. And was there anything new beyond what you argued to Judge Sullivan? I believe there were new facts such as the timing of when unsealing would likely occur. We did advise because it was appropriate to advise the judges that sealing would not be indefinite. So we did advise the judges of when we expected sealing to be appropriate, when it was expected. Did you tell Judge Stein, I'm getting confused with the letters, that there was a trial scheduled for November 26, I believe, although it could be postponed in that circumstance the information would be disclosed? Or am I reading the wrong letter where maybe it was a letter to Judge Sullivan? There was in the letter to Judge Stein, which was a November 29, 2016 letter, we did inform Judge Stein that there was a case pending before Judge Forrest scheduled for May. Right. I thought in an earlier, and then it must have been an earlier letter, that you said it was scheduled for November but could be postponed. I think that is correct, Your Honor. I think there was an earlier reference to an earlier trial date and it hadn't been moved. Well, what happened? What did you expect to happen between Judge Stein and the November trial date? I mean, you're obviously contemplating the proceedings before Judge Stein were in September. There was a trial date that could have been postponed. In November, so what was the need for continued sealing at that point? Since you were contemplating having to disclose it in November. That's a fair point, Your Honor. However, the investigations were still ongoing with respect to the Westchester County Executive. No one had been indicted. At that time, there had hardly been any, if at all, speculation that that investigation was even going on. So Your Honor is right that ultimately we would have had to disclose, notwithstanding our concerns about ongoing investigations because of a public trial date. However, I don't think that cuts against us in seeking to continue sealing when we have these ongoing investigations. Thank you, Your Honors. I'll keep this brief, Your Honor. I did want to respond and emphasize first that there was no delay here. Mr. Fisher acted pro se when he initially made his motion to unseal. Once that was denied, DNA Info made a separate motion to unseal. As soon as it was denied, they appealed immediately and moved to consolidate those appeals in order to get as expeditious relief as possible. I'd also note, Your Honor, to respond to Judge Corman's question as to whether or not appellants could have asked what judge was presiding over Mr. Recknitz's trial. In fact, Mr. Fisher, at A3 of the record, when he initially made his pro se motion to unseal, asked, noted that because the case was sealed, he did not know who the Federal judge was who was assigned, and asked that it be relayed to that judge, relayed that request to the appropriate authority. That didn't occur. We remained before, or he remained, rather, before the Part 1 judge. Is it always the case that the sealing of any portion of a criminal proceeding, including a plea, necessarily will evade review? I think, Your Honor, that you're making a category. I think you're asking us to make a more or less categorical decision with respect to, on the mootness issue, with respect to sealing. No, Your Honor. I think in this case, in fact, that the sealing, the 9-month period of sealing was too short for full appellate review. So suppose that the government had sealed it and decided to seal for two years. Then that would have been too prolonged a period of time to evade review. I think it is, as Your Honor suggests, a fact-specific inquiry. I would speak to the court as Robin said. Other than Roe v. Wade, why is 9 months too short a period? If you're telling me that we're supposed to look at this as not categorical and we're supposed to look at the, at least in the context of this particular issue, the actual duration of the period of time of sealing, then why is 9 months just analytically too short while a year and a half is not? I think factually, in this particular case, it was too short. We're standing before you now with the case having been entirely unsealed as of November 22nd, just a few weeks ago, was when all the redacted material was unsealed. The case was first made public, I would say, in March. So factually in this case. Once that happened, there was no rush. In March. Yeah. Once it happened, there was no rush. But what troubles me is that it could have easily been decided during the period prior. And I would point again to the D.C. Circuit's decision, I think it's a well-reasoned decision in Washington Post against Robinson, that discusses this in the context of a plea agreement, which is, it recognizes, the Court recognized in that case, that it is different than a criminal proceeding, a voir dire proceeding, for example, that where the duration of that proceeding is always going to be too short, frankly, for appellate review. But when it comes to sealing orders, I think it's important to note, because the government did it here, the district court controls the timing of unsealing. So at any point in time, any point in time, the district court could have sua sponte unsealed this material. The government could have done it on the government's motion, which is what occurred here. The government moved to unseal the close of its investigation into Mayor de Blasio. And I would note that that was before Mr. Ereknitz testified publicly in any trial. The government moved to unseal. And the district court granted that motion. So the control over the unsealing process unnecessarily means that it can be unsealed really at any time. So these types of cases, it isn't that they always have to abate review. That's not the way. I certainly read the case law, and there's no case law suggesting that cases like this always need to be reviewed. They have to be capable of repetition but abating review, capable of abating review. And I think that this case fits into that category. Thank you very much. Thank you, Your Honors. We'll argue it on both sides. We'll reserve decision.